UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CARLOS ALVES,** | Civil Action No. 21-16566 (MCA) |
| Petitioner, | |
| v. | **MEMORANDUM & ORDER** |
| **RAYMOND ROYCE, et al.,** | |
| Respondents. | |

This matter has been opened to the Court by Petitioner Carlos Alves' filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction on January 21, 2001, for first degree murder in violation of N.J.S.A. 2C:11-3(a).

"Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." *McFarland v. Scott*, 512 U.S. 849, 856 (1994); *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). Habeas Rule 4 requires a district court to examine a habeas petition prior to ordering an answer and "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." 28 U.S.C. § 2254 Rule 4. Dismissal without the filing of an answer is warranted "if it appears on the face of the petition that petitioner is not entitled to relief." *Id.*; *see also McFarland*, 512 U.S. at 856; *Thomas*, 221 F.3d at 437 (a habeas petition may be dismissed where "none of the grounds alleged in the petition would entitle [the petitioner] to relief").

For the reasons explained below, the Court will <u>not</u> dismiss the Petition at screening at this time, but will provide Petitioner with the required notice pursuant to *Mason v. Meyers*, 208

F.3d 414, 418 (3d Cir. 2000), and invite him to seek a protective stay until the claims in his Petition are fully exhausted in state court.

The Court provides the following factual background taken from the New Jersey Appellate Division's decision reversing and remanding the trial court's denial of Petitioner's motion for DNA testing:

> On August 14, 1999, the body of Maria Fernando Lobo, defendant's girlfriend, was discovered in a basement apartment in Newark, where defendant and Lobo lived. At that time, Lobo earned a living cleaning homes of her clients. She kept a regular schedule and rarely missed appearing at a client's home in accordance with her schedule. When she did miss work, her clients received advance notice. Lobo missed her appointments on August 12 and August 13, 1999. Her clients did not receive notice.
>
> On August 14, firefighters broke into Lobo's apartment and discovered her body on the sofa. She had on the same clothes she had been wearing on August 11, 1999. An investigation revealed that defendant and Lobo had been together on August 11, 1999. Defendant left for Portugal on August 12, 1999, and was not present when Lobo's body was discovered.
>
> The deputy medical examiner classified Lobo's death as a homicide and opined she died as a result of mechanical strangling. Police interviewed defendant upon his return from Portugal on August 15, 1999. Defendant denied killing Lobo, insisting that he and Lobo stopped at a bakery together on the morning of August 12, 1999 and then each went off to their respective jobs. Defendant claimed that he was in Portugal when Lobo was killed.
>
> At trial, defendant proffered the testimony of a medical examiner who claimed that Lobo could not have died earlier than August 12, 1999. The State's expert opined that Lobo died approximately seventy-two hours before her body was discovered on August 14, 1999 and concluded that Lobo was killed on August 11, 1999.
>
> On January 21, 2001, a jury found defendant guilty of first degree murder, in violation of N.J.S.A. 2C:11-3(a). In March 2001, defendant was sentenced to thirty years imprisonment with thirty years of parole ineligibility. We affirmed defendant's conviction. *See State v. Alves*, Docket No. A-4355-00 (App. Div. Jan. 23, 2003), *certif. denied*, 178 N.J. 455 (2004).

> Defendant filed a post-conviction relief application, which the trial court denied. We affirmed. *See State v. Alves*, Docket No. A-6331-07 (App. Div. April 19, 2010), certif. denied, 203 N.J. 440 (2010). Defendant thereafter filed a motion for post-trial discovery, which the trial court also denied on June 17, 2011. On July 16, 2012, we affirmed this denial, but permitted defendant to file a motion for post-trial DNA testing, pursuant to N.J.S.A. 2A:84A-32a, if he met its requirements. *See State v. Alves*, Docket No. A-5979-10 (App. Div. July 16, 2012), certif. denied, 213 N.J. 387 (2013).
>
> Defendant subsequently filed a motion for DNA testing of Lobo's fingernails. On May 6, 2014, the Law Division denied this motion, explaining that defendant failed to meet the procedural requirements of N.J.S.A. 2A:84A-32a. The court further stated that defendant had previously argued at trial that his DNA would not be found under the fingernails of the victim, and yet, the jury still returned a guilty verdict. The court reasoned that DNA testing, therefore, would not affect the previous jury verdict, adding that defendant failed to articulate how DNA testing would exculpate him.

*State v. Alves*, No. A-4755-13T4, 2016 WL 5832929, at *1–2 (N.J. Super. App. Div. Oct. 6, 2016). The Appellate Division reversed the trial court's denial of Petitioner's motion for DNA testing, "hold[ing] that defendant has met the requirements of N.J.S.A. 2A:84A-32a(a)(1), and thus this motion warrants a hearing pursuant to N.J.S.A. 2A:84A-32a(b), wherein the trial court shall determine whether the requirements of N.J.S.A. 2A:84A-32a(d) are met." *Id.* at *4.

The procedural history after the Appellate Division's remand is unclear. Based on the exhibits attached to Petitioner's habeas Petition and the information in the Petition, it appears that Petitioner's motion for DNA testing was granted on or about April 9, 2018, and it further appears that <u>partial</u> DNA testing showed that Petitioner was a minor contributor to the DNA under the victim's fingernails, but he was excluded as a major contributor to that DNA, which belonged to an unknown individual.[1] It also appears that Petitioner filed a motion for a new trial

---

[1] Petitioner appears to assert that the DNA testing was not fully performed.

on or about April 9, 2020, based on the DNA evidence; Petitioner asserts, however, that the trial court ignored Petitioner's motion for a new trial for nine months. Petitioner then "appealed," asking the Appellate Division to decide the motion in the first instance. The Appellate Division apparently dismissed his "appeal" in March 2021, as improperly filed, and directed the trial court to decide Petitioner's new trial motion.[2] According to the New Jersey's Promis Gavel System, Petitioner's motion for a new trial is still pending.[3]

On November 17, 2015, Petitioner also filed a *pro se* motion in the Law Division, Criminal Part, seeking reversal of his conviction, and raising the following claims for relief:

> POINT I
>
> THE COURT CONFUSED THE MOTION TO SUPPRESS INVESTIGATION STATEMENT WTH DEFENDANT'S ARGUMENT OF VIOLATION OF THE CODE OF PROFESSIONAL CONDUCT FOR INTERPRETERS TRANSLITERATORS AND TRANSLATORS.
>
> POINT II
>
> THE COURT ERRED IN BARRING THE FACT THAT THE ASSISTANT PROSECUTOR PROVIDE THE JURY HIS UNPROVEN STATEMENTS AND OPINIONS AS FACT IN HIS SUMMATION.
>
> POINT III
>
> THE COURT ERRED IN CATEGOUZING [SIC] DEFENDANT'S PETITION AS A MOTION TO CORRECT AN ILLEGAL SENTENCE.

*State v. Alves*, No. A–2944–15T4, 2018 WL 1247260, at *1 (N.J. Super. App. Div. Mar. 12, 2018). Judge Alfonse J. Cifelli denied defendant's motion in a letter-opinion dated December 24, 2015, finding Petitioner's motion procedurally barred pursuant to Rule 3:22–5 because the

---

[2] Petitioner then filed a motion for leave to appeal to the New Jersey Supreme Court, which was likewise dismissed as improperly filed. It is unclear if Petitioner filed a petition for certification.

[3] *See* New Jersey Courts Public Access, Promis/Gavel, available at https://portal.njcourts.gov/webe4/ExternalPGPA/entry, last visited November 30, 2021.

claims of alleged legal errors committed by the trial judge were previously considered and rejected on direct appeal. The Appellate Division affirmed, *see id.*, and the New Jersey Supreme Court denied certification. *State v. Alves*, 197 A.3d 191, 192 (2018).

Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2254 on August 27, 2021. *See* ECF No. 1 at 16. Petitioner has not executed the required notice pursuant to *Mason v. Meyers*, 208 F.3d 414, 418 (3d Cir. 2000). Petitioner also appears to assert a claim of actual innocence based on newly discovered DNA evidence. As explained above, this claim is still pending in state court.

Notably, the Supreme Court treats actual innocence as a gateway for consideration of untimely or procedurally defaulted claims. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) holding that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations"); *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995) (requiring a showing "that it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence"). The Supreme Court has not yet recognized the existence of a freestanding claim of actual innocence. *See McQuiggin*, 569 U.S. at 392; *cf. In re Davis*, 557 U.S. 952 (2009); *see also Wright v. Superintendent Somerset SCI*, 601 F. App'x 115, 119 (3d Cir.), *cert. denied sub nom. Wright v. Wingard*, 136 S. Ct. 241, 193 L. Ed. 2d 180 (2015), *reh'g denied*, 136 S. Ct. 580, 193 L. Ed. 2d 462 (2015).

In *Herrera v. Collins*, 506 U.S. 390 (1993), the Supreme Court explained that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400. The petitioner in *Herrera* was not entitled to

habeas relief because he did not seek excusal of his procedural default; rather, he argued that newly discovered evidence showed that his conviction was factually incorrect. *Id.* at 404–05. However, the *Herrera* Court left open the possibility of a freestanding claim of actual innocence – at least in the capital context. *See id.* at 417 (O'Connor, J., concurring) (assuming "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim" and finding that the threshold for such a claim would "be extraordinarily high). Subsequently, in *House v. Bell*, 547 U.S. 518, 555 (2006) the Supreme Court held that the Petitioner, who presented newly discovered forensic evidence, narrowly satisfied the gateway standard set forth in *Schlup* and could therefore proceed on remand with procedurally defaulted constitutional claims but did not satisfy the extremely high threshold for freestanding actual innocence claim. *See also Han Tak Lee v. Glunt*, 667 F.3d 397 (3d Cir. 2012) and *Albrecht v. Horn*, 485 F.3d 103 (3d Cir. 2007) (addressing actual innocence claims in context of expert testimony).

At this time, the Court makes no determination about whether Plaintiff can proceed on a freestanding actual innocence claim and/or use the actual innocence claim to overcome timeliness or procedural default of his other claims. The Court will instead provide Petitioner with the *Mason* Notice and invite Petitioner to request a protective stay until he exhausts his state remedies with respect to his unexhausted DNA claim.

Before a District Court may rule on a section 2254 petition from a *pro se* petitioner, it must notify the petitioner that he may: (1) have his petition ruled on as filed, or (2) withdraw the petition and file one all-inclusive § 2254 petition "within the one year statutory period." *Mason v. Meyers*, 208 F.3d 414, 418 (3d Cir. 2000); *see United States v. Miller*, 197 F.3d 644, 652 (3d

Cir. 1999) (holding the same for a section 2255 petition). This notice is required "out of a sense of fairness," *Mason*, 208 F.3d at 418, because the Antiterrorism Effective Death Penalty Act of 1996 ("AEDPA") has a restrictive effect on successive habeas petitions; *see also Holden v. Mechling*, 133 F. App'x 21, 22 (3d Cir. 2005) (explaining same).

Moreover, under AEDPA, this Court may not grant a writ of habeas corpus under 28 U.S.C. § 2254 unless the petitioner has exhausted the remedies available in the courts of the State or exhaustion is excused under 28 U.S.C. § 2254(b)(1)(B). *See Henderson v. Frank*, 155 F.3d 159, 164 (3d Cir. 1998); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir.1997); *Toulson v. Beyer*, 987 F.2d 984 (3d Cir. 1993). To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "The burden is on the habeas petitioner to prove exhaustion." *DeFoy v. McCullough*, 393 F.3d 439, 442 (3d Cir. 2005). The exhaustion doctrine mandates that the claim "must have been 'fairly presented' to the state courts." *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "Fair presentation means that a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citations and internal quotation marks omitted). In sum, the exhaustion doctrine requires the petitioner to afford the state courts "the opportunity to resolve the federal constitutional issues before he goes to the federal court for habeas relief." *Id.* (quoting *Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir.1976)). The exhaustion doctrine thus requires a petitioner challenging a New Jersey conviction under § 2254 to have fairly presented each federal ground that is raised in the petition to all three levels of the New Jersey courts, that

is, the Law Division, the Appellate Division, and the New Jersey Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rose v. Lundy*, 455 U.S. 509 (1982).

Federal district courts may not adjudicate mixed petitions, i.e. petitions that contain both exhausted and unexhausted claims. *Rhines v. Weber*, 544 U.S. 273 (2005). Normally, the Court is directed to dismiss a mixed petition without prejudice, *id.* at 274, but a stay and abeyance may be appropriate when a dismissal without prejudice would cause Petitioner to run afoul of the habeas statute of limitations, and lose his opportunity to seek federal habeas review. *See id.* at 275-76. As the Supreme Court instructed, "stay and abeyance is . . . appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. District courts should grant a stay instead of dismissing a mixed petition "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278. If a stay is not warranted, then the petitioner may elect to delete the unexhausted claims. *See Gould*, 2011 WL 6756920, at *3; if he does not delete the unexhausted claims, then the Court must either (a) dismiss the entire § 2254 petition as unexhausted, *id.* (citing *Rose v. Lundy*, 455 U.S. 509 (1982), or (b) deny all grounds raised in the § 2254 petition on the merits, pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). *See, e.g., Carrascosa v. McGuire*, 520 F.3d 249, 255 (3d Cir. 2008).

It is possible that Petitioner seeks to be excused from exhausting his DNA evidence claim based on the trial court's delays in adjudicating his motion for a new trial. Exhaustion may be excused if state remedies are absent or too ineffective to protect the applicant's rights. *See* §

2254(b)(1)(B). Thus, although the exhaustion requirement exists as a matter of comity, *see Rose v. Lundy*, 455 U.S. 509, 518 (1982), that principle "weighs less heavily [when] the state has had an ample opportunity to pass upon the matter and has failed to sufficiently explain its ... delay," and exhaustion may be excused. *Hankins v. Fulcomer*, 941 F.2d 246, 250 (3d Cir.1991); *see also Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir.1986). Whether a delay is sufficiently "inordinate" to excuse exhaustion depends on the conduct of the appellant, interference by the state in the timely disposition of the matter, the progress made in state court, and the length of the delay. *See Lee v. Stickman*, 357 F.3d 338, 341–44 (3d Cir. 2004). Although Petitioner has provided evidence of some delays, it appears that the New Jersey Courts have provided an avenue for Petitioner to bring his DNA claim, and Petitioner has not shown delays that are egregious enough to warrant excusing exhaustion at this time. *See Taylor v. New Jersey*, 372 F. App'x. 250, 252 (3d Cir. 2010) (finding that the fifteen-month delay Petitioner endured, although unfortunate, was not so egregious as to require excusing exhaustion).

      In light of the foregoing, Petitioner shall notify the Court within 45 days as to whether (1) he wishes to have his Petition ruled on as filed or (2) wishes to withdraw his Petition and submit one all-inclusive § 2254 Petition. If Petitioner wishes to submit an amended petition, he shall submit the amended petition on the correct form within 45 days of the date of this Memorandum and Order. In light of the unexhausted DNA claim, Petitioner may seek to stay his Petition until he exhausts his DNA claim by submitting a motion for a stay within 45 days. If Petitioner fails to respond, the Petition may be dismissed without prejudice as a mixed petition.

      Finally, the Court will deny <u>without prejudice</u> the motion for pro bono counsel, ECF No. 2, because the Petition appears to be a mixed petition, which is subject to dismissal, absent a

stay. If appropriate, Petitioner may renew his motion for pro bono counsel once he fully exhausts his state remedies.

**IT IS, THEREFORE**, on this 7th day of December 2021,

**ORDERED** that the motion for pro bono counsel, ECF No. 2, is denied WITHOUT PREJUDICE; and it is further

**ORDERED** that the Clerk of the Court shall send Petitioner a § 2254 habeas form for state prisoners; and it is further

**ORDERED** that within 45 days, Petitioner shall notify the Court as to whether (1) he wishes to have his Petition ruled on as filed or (2) wishes to withdraw his Petition and submit one all-inclusive § 2254 Petition; if Petitioner wishes to submit an amended petition, he shall submit the amended petition on the correct form within 45 days of the date of this Court's Order; and it is further

**ORDERED** that it also appears that the Petition includes unexhausted claim(s) and Petitioner has not provided sufficient cause to excuse exhaustion; and it is further

**ORDERED** that Petitioner may seek to stay his Petition until he exhausts his DNA claim(s) by submitting a motion for a stay within 45 days of the date of this Memorandum and Order; and it is further

**ORDERED** that if Petitioner fails to respond to this Order, the Court may dismiss the Petition without prejudice as a mixed petition; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order upon Petitioner by regular U.S. mail and **ADMINISTRATIVELY TERMINATE** this matter pending Petitioner's response to the Court's Order.

 

_____
Hon. Madeline Cox Arleo
**UNITED STATES DISTRICT JUDGE**